ROBERTS *v.* DRUILLARD.

BREACH OF MARRIAGE PROMISE—EVIDENCE — DEFAMATION — DAMAGES.

> In an action for breach of promise of marriage, evidence that defendant, in giving his reasons for breaking the engagement, made certain false and slanderous statements concerning the plaintiff, is admissible to show wantonness and malice, by way of enhancing the damages for the breach of promise; but such defamation cannot properly be made the basis of an independent award of damages in such action.

Error to Monroe; Kinne, J. Submitted January 9, 1900. Decided March 13, 1900.

*Assumpsit* by Octavia Roberts against Edward J. Druillard for breach of promise of marriage. From a judgment for plaintiff, defendant brings error. Reversed.

*C. A. Golden* and *H. A. Lockwood,* for appellant.

*H. L. Schellenberg* (*Fred H. Warren* and *E. R. Gilday,* of counsel), for appellee.

HOOKER, J. In an action for breach of promise of marriage, the court permitted plaintiff's counsel to prove various slanderous statements concerning the plaintiff, made by the defendant to third parties at different places and times, after the relations had ended, in the absence of the plaintiff, as a reason for breaking his engagement and refusing to marry her. There is no doubt that this testimony was admissible under authorities hereinafter cited, but an improper use was made of it. The court instructed the jury that:

"Therefore, if the jury find from the evidence that the defendant wantonly, recklessly, and unjustifiably broke off his engagement with the plaintiff, and you further find from the evidence that, in order to excuse himself for so

doing, he made statements regarding her physical condition which would bring her into even greater ridicule and contempt than the mere breaking off of the' engagement would do, and the tendency of which would be to disgrace her and ruin her future prospects and welfare, and you further find from the evidence that such statements were untrue, and that the defendant knew or had good reason to believe them to be false and untrue, and made such statements in bad faith, then you should, in the exercise of a sound and reasonable discretion, award her such additional damages as, in your judgment, she has suffered by reason of the false and slanderous statements so made by the defendant."

This language was broad enough to lead the jury to understand that they could award full damages for these slanders to the same extent as would have been permissible had the various slanders been counted upon in an action for defamation.   It has been said that the testimony was admissible, but it was only for the purpose of showing a bad motive, by way of aggravation of damages, just as willfulness and malice may be shown in a case of tort, to which this class of cases is by the authorities cited said to be analogous in some respects.   The proof of these slanders was admissible, not as substantive causes of action, but as explanatory of the act of the defendant in breaking the contract, just as a libel not declared upon is admissible to explain the animus of a defendant in publishing the libel counted upon in an action for defamation. An examination of the authorities will show this.   In those jurisdictions where punitory damages are permitted, the rule is that these slanders may be shown as a basis for them.   Sutherland says, in his work on Damages (section 987), that circumstances are admissible to show wantonness and ruthlessness, and that she may be allowed, not only full compensation (*i. e.*, for the breach of promise, not slander), but by way of punishment.   There is nothing in the quotation from Sutherland cited which, in my opinion, justifies the inference that compensation for the direct injuries occasioned by such slanders is recov-

erable in the action for breach of promise, or that it may not be recovered in an action of slander, despite a previous recovery of legitimate damages in an action for the breach of promise of marriage. In *Southard* v. *Rexford*, 6 Cow. 261, the court went no further than to say that a slanderous defense is a circumstance that may aggravate damages. In *Kniffen* v. *McConnell*, 30 N. Y. 291, 292, this is the interpretation put upon the opinion in *Southard* v. *Rexford*, and it is said that such rule is an anomaly, and "should not be extended further than that case has carried it." These cases are reviewed in *Thorn* v. *Knapp*, 42 N. Y. 474 (1 Am. Rep. 561), showing that these cases stand upon the proposition that, "in an action for breach of promise of marriage, it is always competent, *for the purpose of enhancing the damages*, to prove the motives that actuated the defendant; that he entered into the contract and broke it with bad motives and a wicked heart." In *Johnson* v. *Jenkins*, 24 N. Y. 252, Judge Allen clearly shows the use to be made of such evidence. He says:

"Every circumstance attending the breaking off of the engagement becomes a part of the *res gestœ*. The reasons which were operative and influential with the defendant are material, so far as they can be ascertained; and whether they are such as, tending to show a willingness to trifle with the contract and with the rights of the plaintiff, should enhance the damages, or, on the contrary, showing a motive consistent with any just appreciation of and regard for his duties, should confine the damages within the limit of a just compensation, will always be for the jury to determine. * * * Had the defendant by his declarations shown a wicked mind in the transaction, it is evident that they very properly would have been submitted to the jury further to enhance the damages."

In *Thorn* v. *Knapp*, 42 N. Y. 479 (1 Am. Rep. 565), the court said:

"Suppose he had told the plaintiff, at any time before the trial of the action, that he had discontinued his visits and broken the contract because she was a prostitute; could

she not, upon the same principles, have proved this in enhancement of damages? No damages could be allowed for defaming her by the utterance of these words; but they could be proved as showing the *mind* with which the contract was broken, and as thus bearing upon the damages to be allowed for that."

In *Chellis* v. *Chapman*, 125 N. Y. 214 (26 N. E. 308, 11 L. R. A. 784), the same doctrine is adhered to, viz., that the damages may be enhanced by proof of breach of contract from bad motives. In *Sherman* v. *Rawson*, 102 Mass. 399, the court said: "Damages, it is true, must be awarded solely for the suffering *which results from the defendant's refusal to perform his promise*,"—adding that they cannot be justly estimated without taking into consideration the circumstances of the relation and the breach. *Baldy* v. *Stratton*, 11 Pa. St. 325, goes no further; and we have not found a single case that permits full recovery for such slanders as are proven in this case in an action for the breach of promise, or that holds that an action for slander is barred by a judgment upon the breach of promise.

The judgment should be reversed, and a new trial ordered.

The other Justices concurred.