## BERTHA HIVELY v. ALBERT GOLNICK.[1]

December 5, 1913.

Nos. 18,282—(105).

**Breach of promise — directed verdict.**

1. In this action to recover damages for breach of promise of marriage,
it is *held* that the trial court was justified in directing a verdict for plain-
tiff.

**Allegation of unchastity — when punitive damages allowed.**

2. Where the defendant, in a breach of promise case, pleads or attempts
to prove unchastity of plaintiff in justification of the breach, or in miti-
gation, and does so maliciously and without reason for believing the defense
true, the jury may award punitive damages. But where defendant makes
such defense in good faith, the rule is different. Assuming that this rule
is applicable to the defense made in this case, an instruction on the subject
was erroneous because omitting the element of the motive of defendant in
pleading and attempting to prove the defense.

[1] Reported in 144 N. W. 213.

---

Note.—On the question of disease as a defense for breach of promise to marry,
see note in 15 L.R.A. 531. And upon ill health as defense to an action for breach
of promise to marry, see notes in 7 L.R.A.(N.S.) 582 and 40 L.R.A.(N.S.)
585.

The authorities on the measure of damages for breach of promise to marry are
reviewed in 41 L.R.A.(N.S.) 840.

**Punitive damages — necessary allegations.**

3. To justify the recovery of punitive damages in a breach of promise action, the complaint must contain appropriate allegations of the intent or purpose of defendant in doing the alleged wrongful act, as that he acted maliciously, wantonly, to oppress or injure plaintiff.

**Same — erroneous charge.**

4. The damages that may be awarded in such a case are not by way of compensation to plaintiff for the damage suffered by her from the making of the defense, but are solely punitive or exemplary damages. As the complaint did not allege any malicious motive of defendant, and as there was no claim of the right to recover punitive damages, the instruction was error. The error was prejudicial.

**Damages not excessive.**

5. The verdict was not excessive.

**Element of damages.**

6. Under the evidence, the jury might, in considering the damages, take into consideration plaintiff's loss of opportunity during the engagement to contract a marriage with another.

**Injury to health of plaintiff.**

7. It was not error to instruct that the jury might consider the injury to plaintiff's health. It is not necessary to specially plead injury to health as an item of damages in a breach of promise action.

**Assignment of error.**

8. An assignment of error as to misconduct of counsel *held* without merit.

Action in the district court for Lac qui Parle county to recover $10,000 for breach of promise of marriage. The case was tried before Qvale, J., who directed a verdict in favor of plaintiff, and a jury which assessed her damages at $800. From an order denying his motion for a new trial, defendant appealed. Reversed and new trial granted.

*T. J. McElligott,* for appellant.

*Fosnes & Fosnes,* for respondent.

BUNN, J.

Action to recover damages for breach of promise. The complaint alleged the promise, breach, and general damages in the sum of $10,000. The answer admitted the promise, and that defendant had

refused to marry the plaintiff, and alleged that at the time of the engagement, for a long time prior thereto, and ever since, plaintiff was "afflicted with a chronic disease of an epileptic nature, and was subject to having fits and spells at frequent times." It was alleged that plaintiff well knew "her said diseased condition," and fraudulently concealed the facts from defendant, representing that she was in sound health and not afflicted with any disease; that defendant had no knowledge or information in regard to plaintiff's condition until February, 1912, a year after the engagement was entered into; that he believed plaintiff was free from disease, and upon discovering in February, 1912, that she was "afflicted with disease and was subject to having fits and spells of an epileptic nature," in good faith determined that it would be unsafe and improper for defendant and plaintiff to marry, and on this account alone refused to marry plaintiff. The reply was a general denial.

The trial court instructed the jury to return a verdict for plaintiff, submitting to them the question of damages. A verdict of $800 was returned. A motion for a new trial was denied and defendant appealed.

The questions here are whether the court was justified in directing a verdict for plaintiff, and whether there was any prejudicial error in the instructions and whether the verdict is excessive.

It is first contended that the court was not justified in refusing to submit to the jury the question whether defendant had good cause for refusing to marry plaintiff. The defense attempted to be made was that plaintiff was an epileptic person, and therefore that the marriage was prohibited by R. L. 1905, § 3554; G. S. 1913, § 7090. It is to be noted that the answer does not distinctly charge that plaintiff was an "epileptic" person, but is to the effect that she was afflicted with a "chronic disease of an epileptic nature." The evidence showed that plaintiff had a "spell" in August, 1911, and another in January, 1912. In both of these she was unconscious. But the evidence was practically conclusive that these spells were not epileptic fits but were manifestations of hysteria. There is a strong suggestion that plaintiff's health, at no time robust, was affected by

worry over defendant's postponement of the marriage, originally set for June, 1911, and later for December, 1911. Five letters of defendant to plaintiff, written respectively October 1, 1911, May 7, May 15, May 28, and June 5, 1912, were put in evidence. The letter of May 15 broke the engagement. Neither in this letter nor in any of the others is there ·the slightest suggestion that plaintiff's health causes defendant worry, or any hint that he believes her afflicted with epilepsy or any other ailment. He knew of the spells; he had been a witness to one of them. The letter of May 15 gives no excuse for breaking the engagement that can be recognized by a court, nor do the subsequent letters.

Defendant dwells sadly on his own precarious mental and physical state, and his troubles, but says not a word to explain or excuse his attitude. He seems to have prayed for light, and to have received advices from above that it was God's will that they should part. Such a command may serve to salve the conscience of the breaker, but it may not serve as an excuse in law for the breach. It seems quite conclusive that the defense was an afterthought. Though the issues might well have been submitted to the jury, we are not prepared to say that a verdict for defendant could be sustained. Were it not for the error hereinafter pointed out, we would sustain the order appealed from.

The court instructed the jury: "You have also a right to consider the nature of the defense set up by the defendant, and his failure to sustain such a defense, and from a dispassionate canvas and consideration of all of the evidence you will say by your verdict what the amount of recovery shall be." This is assigned as error. We construe the instruction as authorizing the jury to enhance or aggravate the damages because of the nature of the charge made against plaintiff in the defense set up and attempted to be proved. We have stated the nature of this defense. It does not impute immorality or unchastity, but only the existence of a "chronic disease of an epileptic nature." The instruction, if otherwise correct, is clearly erroneous in not including the element of defendant's motives in making the defense. Unless he acted maliciously or wantonly or in bad faith, in pleading and attempting to prove the defense, the jury

had no right to punish him for so doing. "Where defendant maliciously, wantonly or recklessly alleges as a defense plaintiff's want of chastity, and fails to prove his allegations, the fact should be considered to aggravate the damages, but where defendant makes the attempt to establish such facts in good faith and fails, the rule is otherwise." 5 Cyc. 1020, and cases cited. This defect in the instruction might perhaps be held not to be available because it was not specifically called to the court's attention when the charge was given, though the instruction was then excepted to. Krulic v. Petcoff, 122 Minn. 517, 142 N. W. 897.

But we are unable to sustain the instruction for another reason. In effect it authorizes the jury to award plaintiff compensatory damages resulting to her from defendant's pleading and attempting to prove the defense. In breach of promise cases, while the action is on contract, the rule of damages is in some respects analogous to the rules in actions for tort. Johnson v. Travis, 33 Minn. 231, 22 N. W. 624; Beaulieu v. Great Northern Ry. Co. 103 Minn. 47, 114 N. W. 353, 19 L.R.A.(N.S.) 564, 14 Ann. Cas. 462. As in tort actions, punitive or exemplary damages may be recovered when the pleading and proof warrants punishment of the defendant, as where he entered into the engagement without intending to perform it, and breaks it unjustifiably. Johnson v. Travis, supra; Clement v. Brown, 57 Minn. 314, 59 N. W. 198; Tamke v. Vangsnes, 72 Minn. 236, 75 N. W. 217; Sneve v. Lunder, 100 Minn. 5, 110 N. W. 99. But it is necessary, to authorize a recovery of punitive damages, that there be appropriate allegations of malice, wantonness, or recklessness in the complaint. In Tamke v. Vangsnes, the justices were equally divided on the question whether it was necessary to the recovery of punitive damages in breach of promise cases that the special facts or circumstances justifying such an award be pleaded. But in Vine v. Casmey, 86 Minn. 74, 90 N. W. 158, it is definitely settled that in an action where the wrongful act does not in itself imply malice, the plaintiff, to warrant a recovery of punitive damages, must, in fairness, allege, not the evidence to establish his claim, but the ultimate fact, the intent or purpose of the defendant in doing the alleged wrongful act; that is, that it was wantonly, or maliciously done, or

with the purpose of oppressing or insulting the plaintiff. The complaint in the case at bar contains no such allegation. The charge of the court contains no mention of punitive damages. It is apparent, we think, that plaintiff made no claim to any but compensatory damages, and that the court, in the instruction in question, permitted the jury to grant plaintiff compensation for any damages caused her by the pleading and attempt to prove the defense.

That actual compensatory damages caused by the making of such a defense cannot be recovered in the action is, we think, quite clear, both on principle and under the authorities. The wrong in setting up and attempting to establish a defense known to be false, or without reason for believing it true, is entirely separate from the breach of promise. Such a cause of action would be in the nature of libel. Occurring, as it must, after the action for the breach is commenced, and there being no pleadings to form an issue, it would seem clear that any recovery for the wrong must be in another action. The authorities are practically uniform to the effect that pleading and attempting to prove a defense of unchastity in a breach of promise case is not ground for awarding compensation for the additional injury, but does justify a jury in awarding punitive damages, when the defense is made maliciously and without reasons for believing it true. Southard v. Rexford, 6 Cowen, 254; Thorn v. Knapp, 42 N. Y. 474, 1 Am. Rep. 561. These New York cases established the rule that maliciously pleading or attempting to prove the unchastity of the plaintiff as a defense or in mitigation of damages, was a justification for awarding punitive damages. The instruction upheld in Southard v. Rexford was that, if defendant had spread the case upon the record for the purpose of destroying plaintiff's character, the jury would be justified in giving exemplary damages. Powers v. Wheatley, 45 Cal. 113. In Roberts v. Druillard, 123 Mich. 286, 82 N. W. 49, defendant, in giving his reasons for breaking the engagement, made slanderous statements concerning the plaintiff. It was held that evidence of these statements, made after the breach, was admissible to show the malice in the act of defendant in breaking the contract and for the purpose of enhancing the damages, but not as substantive causes of action to be made the basis of an award of compensatory

damages in the action. The cases cited in 5 Cyc. 1020, notes 75 and 76, are in accord with the New York and Michigan cases on this proposition. They all proceed on the theory that maliciously setting up a defense of such character, without expectation of being able to prove it, is evidence of malice in the making or breaking of the contract, sufficient to justify punitive damages. We find no case that holds that the charge can be made the basis of a recovery in the breach of promise action of compensatory damages.

It therefore follows that it was error to give the jury this instruction. There was no allegation of wantonness or malice in the complaint, and no claim made at the trial that plaintiff was entitled to recover punitive damages. She was not entitled to recover compensatory damages for any injury to her reputation or feelings caused by the charge in defendant's answer. We are unable to say that the error was without prejudice. While the verdict is not a large one, we have no right to say that it would not have been less had the instruction not been given. The jury might well have concluded that plaintiff's actual damages, outside of the injury to her pride, were not very great, considering the character of defendant as shown by his letters. They may have been quite ready to punish him for making such a defense and writing such letters. This they had no right to do.

For guidance on another trial we will briefly state our conclusions on the other points raised.

The amount is not excessive.

It was not error to instruct the jury that in considering the amount to be awarded they might take into consideration plaintiff's loss of opportunity during her engagement for contracting a suitable marriage with another.

It was not error to instruct that the jury might consider the injury to plaintiff's health. We find some evidence in the record to justify the jury in finding that her health was injured by defendant's refusal to perform his contract. We hold that it was not necessary to specially plead injury to health as an item of damage.

There is no merit in the contention that there was misconduct of counsel for plaintiff in his argument to the jury.

Order reversed and new trial granted.